# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:12-CR-239 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| JOHN WAYNE PERRY, JR. (11) | ) | |
| | ) | |

## SUPPLEMENTAL ORDER

**THIS MATTER** is before the Court *sua sponte* and in reference to its Order to Continue (Doc. No. 652) issued on August 20, 2014. That order continued the date of trial for Defendant John Wayne Perry until November 17, 2014 following a mistrial due to a hung jury on June 16, 2014. Since that order issued, Defendant has filed a motion to dismiss for violation of the Speedy Trial Act which complains that, among other things, the Court's order "states no substantive reason" for the continuance and "is not enough of an explanation to satisfy the Speedy Trial Act." (Doc. No. 684-1 at 7).

The order noted that the Court, in determining whether to continue the case, had "considered the requirements of 18 U.S.C. § 3161(h)(7)(A), as well as the factors in 18 U.S.C. § 3161(h)(7)(B), and finds that the ends of justice are served by continuing this matter and that such action outweighs the interest of the public and the Defendant to a speedy trial." (Doc. No. 652). The order added: "Notably, the Court finds that this case is so unusual or complex that it is unreasonable to expect adequate preparation for pretrial proceedings and the trial itself within the established time limits," clearly referencing the language in 18 U.S.C. § 3161(h)(7)(B)(ii). The Court's order was brief, spanning only a single page. Indeed, many of the Court's orders to

1

continue in this case have been brief, not because the Court failed to conduct the balancing test laid out in 18 U.S.C. § 3161, but because the reasons why this case is unusual and complex are abundantly clear to anyone who has been involved in it. Nevertheless, in an abundance of caution, the Court will now supplement its order to reflect its reasoning at the time of issuance.

## SUPPLEMENTAL FINDINGS

### A. Procedural Background

On July 26, 2012, Defendant was charged along with sixteen co-conspirators in a seventy-five page Bill of Indictment (Doc. No. 3). That Indictment charged Defendant Perry specifically with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h). The Indictment remained under seal while the Government attempted to locate two alleged ringleaders of the conspiracy who were international fugitives. On October 24, 2012, Defendant Perry was arrested and the Indictment was unsealed. The Court set a docket call for all defendants for January 7, 2013.

Soon after the defendants in this case made their initial appearances, they began filing motions to continue. On January 2, 2013, the Government filed a Joint Motion for a Preemptory Trial Date (Doc. No. 122) and asked the Court to continue the trial date to October or November 2013. In support, it made several observations about the case, among them: "This is a complex case"; "The Indictment sets forth in significant detail five related schemes carried out by the Enterprise over the course of the last seven years, including (1) investment or securities fraud; (2) mortgage fraud; (3) distribution of illegal drugs; (4) bank bribery; and (5) perjury"; "Discovery in this case is voluminous. The United States has already produced more than 450,000 pages of discovery, and is processing and preparing for production several hundred thousand additional pages of discovery"; "The United States anticipates that trial in this matter could last between

three and six weeks." (Doc. No. 122 at 1). A number of defendants joined this motion, including Defendant Perry. On January 7, 2013, the Court, Honorable Frank D. Whitney, granted each of the pending motions to continue and set trial in this matter for October 2013.

On April 18, 2013, the Grand Jury returned a Superseding Indictment, which charged nine additional Defendants (Doc. No. 158). This eighty-four page Indictment laid out in detail the nature of a $75 million RICO enterprise, the operations of which spanned from 2005 to 2012, and included numerous examples of mortgage and securities fraud transactions in which the enterprise was alleged to have engaged. On May 16, 2013, this case was reassigned to the undersigned Judge. On that same day, Defendant Perry filed a motion to continue the trial date (Doc. No. 213), explaining that counsel was scheduled to appear in another trial in October. On May 20, 2013, the Court directed the Government to recommend groupings of defendants for trial in this case (Doc. No. 217), as courtroom logistics would not permit trying all the defendants at once.

The Court held a status conference on August 15, 2013 where it indicated that it would grant Defendant Perry's motion to continue, despite the Government's opposition, and asked the Government to submit a revised proposal for trial groupings. On September 6, 2013, after the proposal was submitted, the Court issued orders grouping the defendants together for trial (Doc. No. 316) and continuing the trials of all of the defendants who were not in the first trial grouping to January 13, 2014, including Defendant Perry.[1]

The Court conducted a hearing on Defendant Perry's Motion to Dismiss the Indictment on December 16, 2013 and denied that motion on December 20, 2013 (Doc. No. 436). On December 30, 2013, the Court continued the trial date of the third group of defendants to February 3, 2014

---

[1] The Court's grouping order placed Defendant Perry in the third trial grouping to be set for trial "after January." The parties and the Court understood that the third trial segment was to take place in February 2014.

(Doc. No. 440) and issued a scheduling order for that trial (Doc. No. 441). In the weeks that followed, the defendants in the third trial grouping dwindled due to the entry of guilty pleas, a motion to sever due to a conflict of interest, and a motion to continue for a defendant undergoing a psychiatric evaluation. Eventually, Defendant Perry was the only defendant left in the February trial grouping. In the days leading up to trial, he filed two separate motions to compel, and both he and the Government filed motions *in limine*.

On January 25, 2014, just over a week before the trial was to begin, Defendant Perry filed a second motion to continue the trial date (Doc. No. 473). In support of that motion, Defendant explained at length why this case is unusual and complex:

> Since the inception of defense counsel's appointment by the court on or about November 5, 2012, it was clear this case would require significant preparation even though the defendant is charged in one unique transaction. The voluminous discovery caused counsel to file a motion with the court requesting the appointment of a Coordinating Discovery attorney to assist all appointed counsel with the discovery review process. Today, the discovery produced by the government in this case totals approximately one million pages.[2]

(Doc. No. 473 at 1). The motion went on for six pages detailing the difficulties and complexities of this case, including the ongoing addition of discoverable material, the unique challenges presented by various witnesses in this case, and the Government's intent to introduce evidence of related mortgage fraud transactions not contained in the Indictment. Ultimately, counsel for Defendant arrived at the conclusion that "there weren't enough hours in the day to complete all the tasks, file the required motions and be prepared for trial to provide effective representation to the defendant." (Doc. No. 473 at 6).

The Court conducted a hearing on Defendant's motion to continue on January 29, 2014.

---

[2] The motion also noted the difficulty with reviewing these documents even with the aid of an electronic discovery platform, and remarked "if one could review 10,000 documents during an 8 hour day [it] would require approximately 100 days reviewing the material in the database." (Doc. No. 473 at 2).

At the hearing, counsel for defendant acknowledged that she simply was not ready to try this case. Based on these representations, and over the Government's objections, the Court reluctantly agreed to continue the trial. The next day, the Court issued an order continuing the trial until June 16, 2014 (Doc. No. 484). The trial date was later moved one week up, to June 9, 2014, by agreement of the parties (Doc. No. 533). Defendant filed several pre-trial motions leading up to the new trial date, including a motion *in limine* to exclude the testimony of Vincent Maldini (Doc. No. 583).

Trial commenced on June 9, 2014. On that day, the Court ruled on the pending pre-trial motions and denied Defendant's Motion to exclude Maldini's testimony. Despite the fact that the possibility of Maldini's testimony was well known to Defendant—his January motion to continue was premised in part on his lack of preparation for this testimony—Defendant requested that the trial be recessed until the next day because counsel for Defendant was not prepared to cross examine Mr. Maldini. The Government lodged a strong objection, but the court recessed the trial nonetheless. The jury heard just fifteen minutes of evidence before it was dismissed for the day.

The trial resumed on June 10, and the jury heard evidence through June 12. On June 13, the parties gave closing arguments, the Court gave instructions, and the jury retired to deliberate. On June 16, the jury notified the Court that it was split and that it did not believe it could come to a unanimous decision (Doc. No. 609). The Court did not give an *Allen* charge, but did encourage the jury to reexamine the evidence and continue its deliberations. The Court reconvened the jury near the end of the day, whereupon the jury reported that it was hopelessly deadlocked and that no further deliberations would be helpful. Based on these representations, the Court declared a mistrial pursuant to Federal Rule of Criminal Procedure 31(b)(3). Before adjourning, the Court invited the parties to discuss the prospect of when to conduct a new trial, if a new trial would be

necessary, and to share proposed dates with the Court.

That same day, the Court contacted the parties via e-mail and requested proposed dates for Defendant Perry's retrial. Defense counsel responded that she had "no trials scheduled in the fall so I am fairly open except for a few days here and there," and noted that she would contact the Government to discuss specific dates. The parties convened and later contacted the Court, proposing a trial date sometime in October or November, with the exception of the weeks of October 6, October 13, and November 3. In the days that followed, the Court worked to find a date that met the parties' request, and eventually arrived at November 17, 2014. The Court attempted to contact the parties on August 19 and 20 to make certain that this date worked for the parties. The Government responded affirmatively, and Defendant did not immediately provide a response. The Court issued its order to continue on August 20 and set trial for November 17.

### B. Unusualness & Complexity

The Court incorporates herein the procedural and factual background set forth above. This case is both unusual and complex. Defendant Perry is charged in a seven-count, eighty-four page Indictment along with twenty-five other defendants who are alleged to have participated in a massive $75 million RICO conspiracy. The alleged enterprise, which operated from 2005 until 2012, is accused of participating in all manner of criminal activities ranging from mortgage and securities fraud to money laundering and bank bribery to the distribution of illegal drugs. Its victims were banks, doctors, lawyers, unsuspecting investors, and professional athletes. Its ringleaders fled the country, and at least one of them is still an international fugitive. Discovery in this case has reached approximately one million pages (and growing); that, coupled with the complexity of the law surrounding RICO violations has made preparing for trial in this matter a daunting effort. Since receiving this case, the Court has conducted four full-length trials, and

expects to conduct at least one more. Still pending before the Court are numerous motions for acquittal, for new trials, and for the withdrawal of pleas.

Despite the fact that the Indictment describes only one exemplar mortgage fraud transaction in which Defendant Perry is alleged to have participated, his case has been no less unusual or complex. The Government has sought to introduce evidence of several other fraudulent mortgage transactions in which Defendant is alleged to have participated; at the first trial, the Court restricted this evidence to just a few of these transactions. The nature of the alleged offenses has generated, and requires the presentation of, numerous financial documents[3] with which counsel must be intimately familiar. These documents, coupled with the profound complexity of the law surrounding RICO violations, can be especially confusing for jurors, and require careful explanation, instruction, and argument.

The nature of the testimony in this case is also unusual and complex. Many of the witnesses called to testify are alleged co-conspirators who have pled guilty. At the first trial, the Government called Vincent Maldini, a former mob enforcer in Philadelphia[4] turned mortgage fraud architect in Raleigh, North Carolina. Maldini's extensive criminal history called for thorough and well-informed cross examination. Preparation for his testimony has no doubt been burdensome for Defendant, as evidenced by the fact that counsel for Defendant requested a recess in the middle of trial just to prepare for his testimony, despite having known about it for many months. Defendant's sister also took the stand against him.

Rather than engage in an exhaustive summary of all the reasons why this case is unusual and complex, the Court will simply note the reasons already explained, and note also that these

---

[3] The Government's exhibit list from the first trial includes over 100 entries.
[4] *See generally* GEORGE ANASTASIA, THE GOODFELLA TAPES (Harper Collins, 2011) (describing some of Maldini's exploits as a mob assassin).

reasons were well known to the parties at the time of the Court's order continuing trial in this matter. Moreover, this case did not cease being complex once the Court declared a mistrial; if anything, the deadlocked jury is further evidence of the complexity of this case and should provide an impetus for the parties to carefully reconsider and bolster their arguments, exhibits, potential witnesses, and trial strategy.

In sum, this case is precisely the kind of case contemplated in 18 U.S.C. § 3161(h)(7)(B)(ii), notably because of the number of defendants, the complexity of the alleged violations and the law surrounding them, and the nature of the prosecution. This is why the Court has generously granted all of Defendant's motions for continuance, and why the Court has, at each instance, consulted the parties when docketing this case for trial. At each instance, the Court carefully considered the factors enumerated in 18 U.S.C. § 3161(h)(7) and found that, while both the Defendant and the public have a strong interest in Defendant receiving a speedy trial, that interest is outweighed by the necessity of Defendant receiving a *fair* trial; that is, one that allows him a sufficient amount of time to prepare for trial given the unusualness and complexity of this case. Throughout this case, the Court has relied heavily on the parties' own estimations of how much time they needed for that preparation.[5] Here, the parties proposed to conduct the trial in October or November, which was beyond the seventy-day time limitation called for in 18 U.S.C. § 3161(e). The Court selected a date in November that comported with the parties' request and, it hoped, gave them sufficient time to prepare for retrial in this matter. This was done only after the Court determined that the ends of justice served by granting such a continuance outweighed the interest of the public and the Defendant to a speedy trial.

---

[5] This is especially true for counsel for Defendant, who is an experienced criminal defense and trial attorney. She has conducted numerous trials before the undersigned Judge, and he trusts that she knows well the amount of time required for effective trial preparation.

### C. Continuity of Counsel

While not enumerated in its previous order to continue, the Court also considered the importance of maintaining continuity of counsel as contemplated in 18 U.S.C. § 3161(h)(7)(B)(iv). Prior to scheduling retrial in this matter, the Court was made aware that counsel for both the Defendant and the Government were to conduct another retrial in the matter of *United States v. Rand*, Case No. 3:10-cr-182, before the Honorable Robert J. Conrad. The Court understood that this was another complex white-collar fraud case that had been tried in 2011 by counsel for the Government, and also that the court had declared a mistrial due to juror misconduct. The Court further understood that, at the time the parties requested a trial date in October or November, trial in the *Rand* case was expected to take several weeks, lasting well into the summer. Thus, the Court determined that it was not practical to conduct Defendant Perry's retrial within the seventy-day time limitation, both because counsel in this case did not have sufficient time to prepare for and conduct both trials, and because no replacement counsel could come into this case and be sufficiently prepared to conduct a retrial within the seventy-day time limitation, not the least because of the unusualness and complexity of this case.[6]

The Court was also aware that counsel for the Government would be required to prepare for and conduct another trial of two other defendants in this case on September 29, 2014. At the time of the continuance, the Court estimated that the trial could take up to two weeks. Defendant Perry could not be grouped in this trial segment—one of the other defendants had to be separated from trial with Defendant Perry in February because of a conflict of interest. Again, the Court was mindful of these obligations as they pertained to the ability of the parties to maintain continuity of

---

[6] This is exacerbated by the fact that the Court has had difficulty finding replacement counsel at all. Because of the number of defendants and the many conflicts presented in this case, the Federal Defender has exhausted the district's court-appointed counsel list and has begun pulling in attorneys from other districts.

counsel, and in considering the reasonableness of the parties' request for a trial date in October or November.

## **CONCLUSION**

All of the facts outlined in this supplemental order were well known to the parties and to the Court at the time of the Court's Order to Continue (Doc. No. 652). As the order explained, the Court carefully considered these issues, and found that the ends of justice served by continuing trial in this matter outweighed the interest of the public and the Defendant to a speedy trial.

Signed: October 23, 2014

Graham C. Mullen
United States District Judge